**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HDR Holding, Inc., *et al.*,[1] | Case No. 19-11396 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 12, 38** |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507, BANKRUPTCY RULES 2002, 4001, 6004 AND 9014 AND LOCAL BANKRUPTCY RULE 4001-2 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above referenced debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), for entry of an interim order (the "Interim Order") and a final order (this "Final Order"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*:

    (i)    authorization for (a) the Debtors, including Schramm, Inc., a Pennsylvania corporation (the "Borrower"), to obtain up to $6,000,000.00 in principal amount of postpetition financing (the "DIP Facility"), and to access up to $3,000,000.00 in the interim and pending a final hearing all on the terms and conditions set forth in the Interim Order, this Final Order and that certain Debtor-in-Possession Delayed Draw Term Loan Promissory Note (the "DIP

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: HDR Holding, Inc. (2015) and Schramm, Inc. (0480). The Debtors' mailing address is 800 E. Virginia Ave., West Chester, PA 19380.

.

Note," substantially in the form attached hereto as <u>Exhibit A</u> and together with the Interim Order and this Final Order, and all appendices, exhibits or schedules to the Interim Order and to the DIP Note, including, without limitation, the DIP Budget (as defined below) as the same may be amended, restated, or supplemented from time to time in accordance with the terms hereof and thereof, collectively, the "<u>DIP Loan Documents</u>"),[2] among the Borrower, HDR Holding, Inc., a Delaware corporation (the "<u>Guarantor</u>") and Schramm II Inc., a Delaware corporation (with its successors and assigns, collectively, the "<u>DIP Lender</u>"), and (b) the Guarantor to guaranty the Borrower's obligations in respect of the DIP Loans and all other obligations and indebtedness of the Borrower under or arising in connection with the DIP Loan Documents;

(ii)    authorization for the Debtors to, subject to the Carve-Out (defined below) and Permitted Prior Senior Liens, grant security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lender to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "<u>DIP Obligations</u>");

(iii)    authorization for the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("<u>Cash Collateral</u>", which shall not include loan proceeds of the DIP Facility), and all other Prepetition Collateral (defined below), in accordance with the terms of the Interim Order, this Final Order and the DIP Budget, as provided herein;

(iv)    to, subject to the Carve-Out and any Permitted Prior Senior Liens, provide Adequate Protection of the liens and security interests (such liens and security interests, the "<u>Prepetition Liens</u>") of the prepetition lenders (such financial institutions, including Hark (as defined below) and GenNx360 Capital Partners, L.P. ("<u>GenNx360</u>"), in such capacity, the "<u>Prepetition Lenders</u>") under that certain Amended and Restated Credit Agreement, dated as of March 23, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>", and together with any other agreements, instruments, notes, guaranties, and other documents related thereto, collectively, the "<u>Prepetition Financing Documents</u>")), among the Borrower, the Guarantor, the various institutions from time to time party thereto as Prepetition Lenders, and Hark Capital I, LP (f/k/a Enhanced Credit Supported Loan Fund, LP, "<u>Hark</u>"), as Agent (in such capacity, the "<u>Agent</u>", and together with the Prepetition Lenders, collectively, the "<u>Prepetition Secured Parties</u>"), which Prepetition Liens are being consensually primed by

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to those terms in the DIP Loan Documents.

the DIP Facility, as more fully set forth in the Interim Order and this Final Order;

(v)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and this Final Order;

(vi)    that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(vii)    that this Court schedule a final hearing (the "Final Hearing") to consider entry of this Final Order granting the relief requested in the Motion on a final basis; and

(viii)    waiver of any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Interim Hearing having been held by this Court on June 25, 2019 and the notice of the Motion and the relief sought at the Interim Hearing complying with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable law; this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing, and having entered the Interim Order (*i.e.*, that certain *Interim Order Pursuant to 11 U.S.C. 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rule 4001-2 (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Parties and (IV) Granting Related Relief* [Docket No. 38]) on June 25, 2019; and the Final Hearing having been held by this Court on August 2, 2019; and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Final Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion and all pleadings related thereto, including the record made at the Interim Hearing and the Final Hearing, and the objections thereto raised by, among others,

3

the Committee (as defined below) and DNOW L.P. ("DNOW") (including Docket Nos. 129 and 132); and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.      On June 24, 2019 (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 29] entered by this Court on June 25, 2019.

C.      On July 9, 2019 an official committee of unsecured creditors (the "Committee"), as provided for under section 1102 of the Bankruptcy Code, was appointed in the Chapter 11 Cases.

D.      Subject to Paragraph 16 below, and without prejudice to the rights, if any, of any other party, the Debtors admit, stipulate, and agree that:

(a)      as of the Petition Date, the Debtors were indebted and liable, without defense, counterclaim, or offset of any kind to the Prepetition Secured Parties under the Prepetition Financing Documents including under (i) the Term Loan A (as defined in the Prepetition Financing Documents) in the amount not less than $5,347,722.47 plus any other accrued and accruing unpaid Obligations thereunder, including interest, fees and expenses (including legal fees and expenses), (ii) the Term Loan B (as defined in the Prepetition Financing Documents) in the amount not less than $6,500,000.00 plus any other accrued and accruing unpaid Obligations thereunder, including interest, fees and expenses (including legal fees and expenses), and (ii) the Term Loan C (as defined in the Prepetition Financing Documents) in the amount not less than $6,000,000.00 plus any other accrued and accruing unpaid Obligations thereunder, including interest, fees and expenses (including legal fees and expenses).  All obligations of the Debtors arising under the Credit Agreement or any other Prepetition Financing Documents, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses, and

4

obligations for the performance of covenants, tasks, or duties or for the payment of monetary amounts owing to the Prepetition Secured Parties by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement, or other instrument, shall be referred to herein collectively as the "<u>Prepetition Secured Obligations</u>"; and

(b)      as of the Petition Date, the Prepetition Secured Obligations are secured by the security interests granted in those certain Security Documents (as defined in the Credit Agreement, as amended, restated, supplemented, or otherwise modified from time to time), pursuant to which each Debtor granted to the Agent, for the benefit of the Prepetition Secured Parties, to secure such Debtor's Prepetition Secured Obligations, a first priority security interest in the Collateral (as defined in the Credit Agreement and referred to in this Final Order as the "<u>Prepetition Collateral</u>"), including (i) all Accounts; (ii) all cash and Cash Equivalents; (iii) all Chattel Paper (including Electronic Chattel Paper); (iv) all Commercial Tort Claims as set forth on Schedule 3.16(d) to the Credit Agreement (as updated from time to time in accordance with the Credit Agreement); (v) all Copyright Licenses; (vi) all Copyrights; (vii) all Deposit Accounts; (viii) all Documents; (ix) all Equipment; (x) all Fixtures; (xi) all General Intangibles; (xii) all Goods; (xiii) all Instruments; (xiv) all Inventory; (xv) all Investment Property; (xvi) all Letter-of-Credit Rights; (xvii) all Material Contracts and all such other agreements, contracts, leases, licenses, tax sharing agreements, or hedging arrangements now or hereafter entered into by an Obligor (as defined in the Credit Agreement), as such agreements may be amended or otherwise modified from time to time (collectively, the "<u>Assigned Agreements</u>"), including without limitation, (A) all rights of an Obligor to receive moneys due and to become due under or pursuant to the Assigned Agreements, (B) all rights of an Obligor to receive proceeds of any insurance, indemnity, warranty, or guaranty with respect to the Assigned Agreements, (C) claims of an Obligor for damages arising out of or for breach of or default under the Assigned Agreements, and (D) the right of an Obligor to terminate the Assigned Agreements, to perform thereunder, and to compel performance and otherwise exercise all remedies thereunder; (xviii) all Patent Licenses; (xix) all Patents; (xx) all Payment Intangibles; (xxi) all Securities Accounts; (xxii) all Software; (xxiii) all Supporting Obligations; (xxiv) all Trademark Licenses; (xxv) all Trademarks; (xxvi) all books, records, ledger cards, files, correspondence, computer programs, tapes, disks, and related data processing software (owned by such Obligor or in which it has an interest) that at any time evidence or contain information relating to any Collateral or are otherwise necessary or helpful in the collection thereof or realization thereupon; (xxvii) all other personal property of any kind or type whatsoever owned by such Obligor; and (xxviii) to the extent not otherwise included, all Accessions, Proceeds and products of any and all of the foregoing.

E.      The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use Cash Collateral, among other things, to fund working capital requirements, costs, and expenses of administration of the Chapter 11 Cases and fees and expenses relating to the DIP Facility during the pendency of the Chapter 11 Cases.  Without

AmericasActive:13725773.14

access to the DIP Facility and the continued use of Cash Collateral to the extent authorized pursuant to the Interim Order and this Final Order, the Debtors and their estates would suffer immediate and irreparable harm.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without access to the DIP Facility and the authorized use of Cash Collateral.

F.      In light of the Debtors' circumstances, the Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Facility. The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility.  The Debtors require both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Final Order to satisfy their postpetition liquidity needs.

G.      The DIP Lender has indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in the Interim Order, this Final Order and in the DIP Loan Documents.  Accordingly, after considering all of their practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of the Interim Order, this

AmericasActive:13725773.14

Final Order and the DIP Loan Documents represents the best financing currently available to the Debtors.

H.        The consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens, the Carve-Out, and use of the Prepetition Collateral, including Cash Collateral, by the Debtors, is limited to the Interim Order, this Final Order and the DIP Facility presently before this Court and shall not extend to any other postpetition financing or to any modified version of this DIP Facility with any party other than the DIP Lender.  Furthermore, the consent of the Prepetition Secured Parties to the priming of their liens by the DIP Liens, the Carve-Out, and use of the Prepetition Collateral, including Cash Collateral, by the Debtors does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their interests in the Prepetition Collateral are adequately protected pursuant to this Final Order or otherwise, provided, however, the Prepetition Secured Parties agree that the Adequate Protection granted to the Prepetition Secured Parties in the Interim Order and this Final Order is reasonable and calculated to protect the interests of the Prepetition Secured Parties, subject to the rights of the Prepetition Secured Parties to seek a modification of such Adequate Protection, as set forth below.

I.        In light of the Debtors' circumstances, the security interests and liens granted pursuant to the Interim Order and this Final Order to the DIP Lender are appropriate under section 364(d) of the Bankruptcy Code because, among other things, (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to the Interim Order and this Final Order to the DIP Lender or (iii) the interests

of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

J.      In light of the Debtors' circumstances, good cause has been shown for entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(c). In particular, the authorization granted in the Interim Order and this Final Order (to the extent not previously executed) for the Debtors to execute the DIP Loan Documents, to continue using the Prepetition Collateral, including Cash Collateral, and to obtain financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Final Order is in the best interest of the Debtors, their estates and creditors. The terms of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto.

K.      The Debtors, the DIP Lender, and the Agent have negotiated the terms and conditions of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) the Interim Order and this Final Order in good faith and at arm's length. Any credit extended and loans made to the Debtors pursuant to the Interim Order and this Final Order shall be, and hereby are, deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. The Prepetition Secured Parties are entitled to receive Adequate Protection as set forth herein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any diminution in the value of their respective interests in the Prepetition Collateral, including Cash Collateral,

8

resulting from the automatic stay or the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, during the Chapter 11 Cases.

L.      The Debtors acknowledge, represent, stipulate, and agree, that, (i) subject to the entry of this Final Order, the Debtors have obtained all known authorizations, consents, and approvals necessary from, and have made all known filings with and given all known notices to, all federal, state, and local governmental agencies, authorities, and instrumentalities required to be obtained, made, or given by the Debtors in connection with the execution, delivery, performance, validity, and enforceability of the DIP Loan Documents; and (ii) due to the commencement of these Chapter 11 Cases, the Debtors are in default with respect to their Prepetition Secured Obligations and an Event of Default has occurred under the Prepetition Financing Documents.

M.      Based on the foregoing, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**[3]

1.      <u>Jurisdiction and Venue</u>.   Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2).   This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      <u>Notice</u>.  On the Petition Date, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001, and 9014, and the Local Bankruptcy Rules of this

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

AmericasActive:13725773.14

Court, the Debtors provided notice of the Motion, the Interim Hearing and the Final Hearing by electronic mail, facsimile, hand delivery, or overnight delivery to the following parties or to their counsel as indicated below:  (i) the Office of the United States Trustee for this District (the "U.S. Trustee"); (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis and, once appointed, counsel for the Committee; (iii) counsel to the DIP Lender and the Agent; (iv) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (v) the local office for the Internal Revenue Service; and (vi) any party having filed requests for notice in the Chapter 11 Cases (collectively, (i)-(vi), the "Notice Parties").  Given the nature of the relief sought in the Motion, this Court concludes that the form, scope, and timing of the foregoing notice complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law.

      3.     The DIP Budget.

      (a)     Subject to and in accordance with the terms of the DIP Note, the Borrower shall from time to time as set forth below prepare and provide to the DIP Lender and counsel to the Committee a rolling 13-week cash flow forecast setting forth on a line item basis the Debtors' projected cash receipts and cash disbursements on a weekly basis, substantially in the form of the initial budget annexed hereto as Exhibit B (the initial budget and each subsequent budget, a "DIP Budget").  The Borrower may use the proceeds of the DIP Facility and Cash Collateral, for the purposes and up to the amounts set forth in the DIP Budget, together with Permitted Variances (defined in the DIP Note) subject to the terms and conditions set forth in the DIP Note and this Final Order.  No later than 5:00 p.m. (New York time) on Tuesday of each calendar week, commencing on July 2, 2019, the Debtors shall provide the DIP Lender and the Agent, with a copy to counsel to the Committee, with a report (the "DIP Budget Variance

AmericasActive:13725773.14

Report") of the aggregate variance between actual disbursements and projected disbursements as set forth in the DIP Budget for the most recently ended Applicable Period.  Subject to a Permitted Variance, the Debtors' actual disbursements during an Applicable Period shall not exceed those projected in the DIP Budget for such Applicable Period.  Except with respect to fees and expenses of Retained Professionals (as hereinafter defined), subject to Paragraph 30 below, the amount of the DIP Facility and Cash Collateral authorized to be used hereby shall not exceed the amounts reflected in the DIP Budget (together with Permitted Variances), which shall be in form and substance satisfactory to the DIP Lender for the time period set forth therein, but in no event beyond the Maturity Date.  Except as expressly provided for herein, this Order does not create any rights for the benefit of any third party, whether as direct, indirect, or incidental beneficiary.

(b)     The DIP Budget may be amended, supplemented, extended, or otherwise modified from time to time in any manner as to which Debtors and the DIP Lender mutually agree in writing without further order of this Court; provided that notice of any amendments shall be given to the U.S. Trustee and counsel to the Committee.

4.     Reports.  The Debtors shall promptly provide to the U.S. Trustee and counsel to the Committee any DIP Budget Variance Report, any modified DIP Budget, and any other reports required under the DIP Loan Documents; provided, however, the Debtors may take appropriate actions with respect to confidentiality of any portion of the DIP Budget and DIP Budget Variance Report.

5.     Use of Prepetition Collateral (including Cash Collateral).  Immediately upon entry of this Final Order, the Debtors are authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Final Order and the DIP Loan Documents.  The Debtors are further

11

authorized to use the Prepetition Collateral (including Cash Collateral) during the period from the Petition Date through and including the Maturity Date in accordance with the terms and conditions of this Final Order; <u>provided</u>, that the Prepetition Secured Parties are granted Adequate Protection as set forth in this Final Order.

6.     Borrowing Authorization.

(a)     The DIP Facility.  The Debtors are authorized to enter into and perform the transactions contemplated in this Final Order, and the DIP Loan Documents and such additional documents, instruments, and agreements as may be reasonably required by the DIP Lender to implement the terms or effectuate the purposes of this Final Order, and to receive financial accommodations and borrow under the DIP Facility up to $6,000,000.00 subject to the terms set forth in the DIP Note.  The DIP Note and the other DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid, and binding obligations of the Debtors and each of their respective estates, enforceable in accordance with the terms hereof and the DIP Loan Documents against each such Debtor, its respective estate, and any successor of each such Debtor or any representative of the estates (including a trustee, responsible person, or examiner with expanded powers).  The Debtors are authorized to obtain financial accommodations pursuant to the terms of the DIP Budget, this Final Order, the DIP Note, and the other DIP Loan Documents and the Guarantor is hereby authorized to guaranty such financial accommodations and borrowings in accordance with the terms of this Final Order, the DIP Note, and the other DIP Loan Documents.

(b)     Use of Proceeds.  The Debtors are authorized to utilize the proceeds of Loans to fund working capital requirements, costs and expenses of administration of the Chapter 11 Cases, and fees and expenses relating to the DIP Facility during the pendency of the Chapter

11 Cases.

7.    <u>Due Authorization</u>.   The Debtors acknowledge, represent, stipulate, and agree, and this Court hereby finds and orders, that:

(a)    in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lender reflected herein and in the DIP Loan Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in full in cash and the DIP Note and DIP Loan Documents are terminated in accordance with the terms thereof, the DIP Obligations, the DIP Liens, or the DIP Superpriority Claims provided to the DIP Lender under this Final Order shall not be primed by a subsequent lender or a party in interest through the granting of a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 (other than expenses of a trustee under section 726(b)) or 1114 of the Bankruptcy Code) or otherwise, except as expressly authorized in the DIP Note (<u>provided</u>, that the DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Parties, the Adequate Protection Liens (defined below), and the Section 507(b) Claims (defined below) of the Prepetition Secured Parties, shall be subordinate and subject to the Carve-Out (defined below));

(b)    the Guarantor is liable for, and hereby absolutely and unconditionally guarantees to the DIP Lender and its successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Lender by the Borrower.   The Guarantor agrees that (i) its guarantee obligation hereunder shall be, and is, absolute and unconditional for all purposes in these Chapter 11 Cases and is a present and

continuing guaranty of payment and performance and not of collection, and (ii) its obligations under this Final Order and any DIP Loan Document shall not be discharged until the indefeasible payment and performance, in full in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Loan Documents; and

(c)     in no event shall the DIP Lender by entering into the DIP Loan Documents be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Lender do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs by the lender of a vessel or facility owned or operated by a debtor, or otherwise cause liability to arise to the federal or state government, or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

8.     <u>DIP Interest and Payment of Expenses</u>.

(a)     The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Loan Documents, and be due and payable in accordance with this Final Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before this Court.

(b)     The Debtors shall pay the reasonable and documented prepetition and postpetition fees and expenses of the attorneys and advisors (each, a "<u>DIP Lender Advisor</u>") for the DIP Lender as provided under the DIP Loan Documents.  No DIP Lender Advisor shall be

14

required to file an application seeking compensation for services or reimbursement of expenses with this Court.  Each DIP Lender Advisor seeking compensation for services or reimbursement of expenses under the DIP Loan Documents, the Interim Order, or this Final Order shall transmit a reasonably detailed invoice to counsel to the Debtors, the U.S. Trustee, and the Committee, provided that any such invoice may be reasonably redacted by each DIP Lender Advisor to protect from disclosure any confidential information or information otherwise subject to a protective privilege such as attorney-client privilege or attorney work-product privilege.  The Debtors, the U.S. Trustee, and the Committee, shall have ten (10) Business Days in which to raise an objection to the payment of any fees and expenses of such DIP Lender Advisor.  Upon the expiration of such ten (10) Business Day period, the Debtors shall promptly pay any portion of such fees and expenses to which no objection has been interposed.  To the extent any objection has been interposed and cannot be consensually resolved, the dispute will be scheduled for adjudication at the next regularly-scheduled omnibus hearing in the Chapter 11 Cases.[4]

9.     <u>Amendments</u>.  Each of the Debtors, after consultation with the Committee, is expressly authorized and empowered to enter into amendments, supplements, extensions, or other modifications from time to time in any manner as to which Debtors and the DIP Lender mutually agree in writing without further order of this Court; <u>provided</u>, that any material modification or amendment shall be subject to Court approval following notice of any such material modification or amendment by the Debtors to the Agent, the U.S. Trustee, counsel to the Committee and the Rule 2002 service list, which parties may object to such modification or amendment, in writing, within five (5) Business Days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtors,

---

[4] Subject to the priorities set forth herein, nothing in the Interim Order or this Final Order affects the Agent's or the Prepetition Secured Parties' rights to seek prepetition and postpetition professional fees and other expenses arising under the Prepetition Financing Document as part of any allowed claim in the Chapter 11 Cases.

AmericasActive:13725773.14

shall be transmitted by fax or e-mail, and, if not known, by overnight mail); provided, further, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of this Court, the entry of which may be sought on an expedited basis.

10.    Superpriority Claims and DIP Liens.  In respect of the DIP Obligations under the DIP Note, the other DIP Loan Documents and this Final Order the DIP Lender is granted the following with respect to the Debtors, their estates and all DIP Collateral:

(a)    a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726 (other than expenses of a trustee under section 726(b)), and 1114 of the Bankruptcy Code or otherwise), which superpriority expenses of the DIP Lender shall be subordinate to the DIP Liens (defined below) and the Carve-Out (the "DIP Superpriority Claims"); provided that pursuant to applicable bankruptcy law, the granting of such DIP Superpriority Claims does not affect the status and superior priority of any liens, including the liens of the DIP Lender, the Prepetition Secured Parties and the holder of any Permitted Prior Senior Lien (defined below).

(b)    a first priority, priming security interest in and lien pursuant to section 364(d)(1) of the Bankruptcy Code on all encumbered property of the Debtors and their estates (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including the Prepetition Liens of the Prepetition Secured Parties, subject only to (i) the Carve-Out and (ii) liens on property of the Debtors (including the proceeds of such property) that are in existence on the Petition Date other than the Prepetition Liens of the

Prepetition Secured Parties, but only, if applicable, (A) to the extent such lien on any property is valid, perfected, and not avoidable, (B) such lien on such property (or the proceeds of such property, as applicable) on the Petition Date is a valid, perfected, and non-avoidable Permitted Lien (as defined in the Credit Agreement) senior in priority to the prepetition liens on such property, or (C) to the extent such lien could be on unencumbered property under (A) above or, other than not being perfected as of the Petition Date, would otherwise qualify as a senior permitted lien under (B) above, a valid, non-avoidable lien that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clause (ii) being referred to collectively as the "Permitted Prior Senior Liens");

(c)       a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all unencumbered property of the Debtors, and any and all products, rents, offspring, profits, and proceeds of any of the foregoing (the "Section 364(c)(2) Liens").  The Section 364(c)(2) Liens shall not include, extend to, or apply to, any claims and causes of action relating to or arising under Chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548 and 550 or any other similar state or federal law  and any and all products, rents, offspring, profits, and proceeds of same (the "Avoidance Actions").  The  Section 364(c)(2) Liens shall be subject to the Carve-Out; and

(d)       a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all property of the Debtors and their estates that is subject to a Permitted Prior Senior Lien (collectively, the "Section 364(c)(3) Liens"), which Section 364(c)(3) Liens are also subject to the Carve-Out.  The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens."

AmericasActive:13725773.14

11.     <u>DIP Collateral</u>.  The DIP Liens of the DIP Lender under the DIP Loan Documents and as approved and perfected by this Final Order include, <u>inter alia</u>, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing (collectively, (i)-(iv), the "<u>DIP Collateral</u>").  None of the DIP Obligations, DIP Liens, or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Final Order.

12.     <u>Carve-Out</u>.

(a)     <u>Generally</u>.  The DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Parties, the Adequate Protection Liens, and the Section 507(b) Claims (defined below) of the Prepetition Secured Parties, shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "<u>Carve-Out</u>") from, at the Debtors' discretion, any

loan proceeds of the DIP Facility, Cash Collateral, or proceeds resulting from liquidation of DIP Collateral or Prepetition Collateral (and not from either cash collateral or proceeds resulting from the liquidation of any collateral of any holder of a Permitted Prior Senior Lien):

        (i)      Subject to the allocations under the Budget, the reasonable fee and expense claims of the respective retained professionals of the Debtors and the Committee, that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code including any interim approval as set forth in any procedures approved by the Court relating to the interim approval of fees and expenses of the Retained Professionals (the Court approved professionals of the Debtors and the Committee are collectively referred to as the "Retained Professionals"), the reasonable expenses of members of the Committee ("Committee Member Expenses", which shall not include legal fees and expenses of Committee members) which were incurred (A) on and after the Petition Date and before the Carve-Out Trigger Date (defined below), and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $50,000 for all Retained Professionals and Committee Member Expenses; provided that, in each case, such fees and expenses of the Retained Professionals and Committee Member Expenses are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 17 of this Final Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); provided further that any Court-approved bonus, transaction, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any person or entity referenced in this paragraph shall be paid solely from the net proceeds of the Court approved transaction giving rise to such award;

AmericasActive:13725773.14

        (ii)      Subject to the "Health Insurance Claims/Premiums" line item in the Budget, up to $70,000 for self-insured administrative expense claims; and

        (iii)     the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. § 3717.  There is no limitation on the obligations of the Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

        (b)      <u>Carve-Out Trigger Date</u>.  As used herein, the term "<u>Carve-Out Trigger Date</u>" means the date on which the DIP Lender provides written notice to the Debtors, the U.S. Trustee, and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Loan Documents or upon the Maturity Date.

        (c)      <u>Reduction of Amounts</u>.  The fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals and with respect to Committee Member Expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).

        (d)      <u>Reservation of Rights</u>.  The DIP Lender reserves its rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the DIP Budget.  The payment of any fees or expenses of the Retained Professionals and Committee Member Expenses pursuant to the Carve-Out shall not, and shall

not be deemed to (i) reduce any Debtor's obligations owed to any of the DIP Lender, Prepetition

Secured Parties, or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter, or

otherwise affect any of the liens and security interests of such parties in the DIP Collateral or

Prepetition Collateral (or their respective claims against the Debtors).  The DIP Lender and

Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of

any fees or disbursements of any Retained Professionals, Committee Member Expenses, the U.S.

Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the

Chapter 11 Cases or any successor case, and nothing in the Interim Order, this Final Order or

otherwise shall be construed to obligate such parties in any way to pay such compensation to or

to reimburse such expenses.

       13.    <u>Waiver of Right to Surcharge</u>.  In light of (i) the consent of the DIP Lender to the

current payment of administrative expenses of the Debtors' estates in accordance with the DIP

Budget, (ii) the agreement of the DIP Lender to subordinate its Superpriority Claims to the

Carve-Out, and (iii) the agreement of the DIP Lender to subordinate its DIP Liens to the Carve-

Out and Permitted Prior Senior Liens, the DIP Lender and Prepetition Secured Parties (other than

GenNx360 and Hark in their capacities as Prepetition Lenders) are each entitled to a waiver of

(a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case"

claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  No costs or

expenses of administration or other charge, lien, assessment, or claim incurred at any time

(including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any

other person or entity shall be imposed or charged against any or all of the DIP Collateral, the

DIP Lender, the Prepetition Collateral (other than the Prepetition Collateral of GenNx360 and

Hark in their capacities as Prepetition Lenders), and the Prepetition Secured Parties (other than

AmericasActive:13725773.14

GenNx360 and Hark in their capacities as Prepetition Lenders), or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, the Interim Order, this Final Order and the DIP Loan Documents, the DIP Lender and Prepetition Secured Parties (other than GenNx360 and Hark in their capacities as Prepetition Lenders ) have each relied on the foregoing provisions of this Paragraph. Notwithstanding any approval of or consent to the DIP Budget, nothing in the Interim Order or this Final Order shall constitute or be deemed to constitute the consent by any of the DIP Lender and the Prepetition Secured Parties to the imposition of any costs or expense of administration or other charge, lien, assessment, or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims, or its collateral under sections 105(a), 506(c), or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

14. <u>Automatic Perfection</u>.

(a) The (i) DIP Liens granted to the DIP Lender pursuant to the Interim Order and this Final Order and the DIP Loan Documents and (ii) Adequate Protection Liens granted to the Prepetition Secured Parties pursuant to the Interim Order and this Final Order shall be valid, enforceable, and perfected by operation of law upon entry of this Final Order by this Court without any further action by any party. Neither the DIP Lender in respect of the DIP Liens, nor the Prepetition Secured Parties in respect of the Adequate Protection Liens, shall be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record

AmericasActive:13725773.14

any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien, or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property) (collectively, the "Perfection Documents"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the DIP Liens granted under the DIP Loan Documents, the Interim Order, and this Final Order and the Adequate Protection Liens granted under the Interim Order and this Final Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Final Order.  If the DIP Lender or Prepetition Secured Parties, independently or collectively, in each of their respective sole discretion, choose to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents.  In lieu of optional recording or filing any Perfection Documents, the DIP Lender and the Agent may, in each of their sole discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Lender and the Agent shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.  In addition, the DIP Lender may, in its reasonable discretion,

AmericasActive:13725773.14

require the Debtors to file or record any Perfection Document.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Lender all Perfection Documents as the DIP Lender may reasonably request.

(b)    Until the indefeasible payment in full in cash of the DIP Obligations, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody, or control of the Agent (or in the possession, custody, or control of agents or bailees of the Agent) shall be deemed to be sufficient for the purposes of perfecting the security interests granted in such DIP Collateral and Agent (or their agents or bailees, as applicable) shall, to the extent applicable, be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Lender for the purposes of perfecting the security interests granted in such DIP Collateral.  Upon an Event of Default and the request of the DIP Lender or the Agent (or their agents or bailees, as applicable) shall transfer, assign, and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in its possession, custody, or control to the DIP Lender for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the indefeasible payment in full in cash of all DIP Obligations, the DIP Lender (or its agents or bailees, as applicable) shall transfer, assign, and otherwise convey any Prepetition Collateral and Perfection Documents to the Agent.  The authorization, grant, perfection, scope, and vesting of the DIP Liens, the DIP Superpriority Claims, and the DIP Obligations are fully effectuated by this Final Order and any security agreements, collateral agreements, or other Perfection Documents executed as part of the DIP Loan Documents shall supplement the authorization, grant, perfection, scope, and vesting set forth herein as well as the powers and protections accorded to the DIP Lender, but in no event shall any such security agreement, collateral

AmericasActive:13725773.14

agreement, or other Perfection Document be interpreted as a limitation of such provisions of this Final Order.

15.     <u>Stipulations and Waivers</u>:  Subject to and without prejudice to the rights of the Committee and any other party with standing as set forth in Paragraph 16 below, the Debtors admit, stipulate, and agree to the following, and make the releases and waivers set forth below, on and as of the Petition Date:

(a)     All Prepetition Financing Documents are valid and enforceable by the Prepetition Secured Parties against each of the Debtors in accordance with their respective priorities.  With respect to the Prepetition Collateral, the Prepetition Secured Parties have valid, duly-authorized, perfected, enforceable, non-voidable, and binding security interests in, and liens on, substantially all of the Prepetition Collateral as of the Petition Date (with the Prepetition Secured Parties holding junior liens on all Collateral), including the Cash Collateral.  The Debtors further admit, acknowledge, and agree that (i) the Prepetition Secured Obligations constitute legal, valid, and binding obligations of each of the Debtors, (ii) no offsets, defenses, or counterclaims to the Prepetition Secured Obligations exist, and (iii) no portion of the Prepetition Secured Obligations is subject to avoidance, disallowance, reduction, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(b)     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Parties with respect to the Prepetition Financing Documents, whether arising at law, in contract, or at equity, including any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553, inclusive, of the Bankruptcy Code or applicable non-bankruptcy law.

AmericasActive:13725773.14

(c)      As of the Petition Date, the Prepetition Secured Obligations for which the Debtors, without defense, counterclaim, or offset of any kind, were truly and justly indebted to the Prepetition Secured Parties, not less than the amount set forth in Paragraph D of this Final Order <u>plus</u>, in each case, all accrued or hereafter accruing and unpaid interest thereon and any additional amounts, charges, fees, and expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Financing Documents) now or hereafter due under the Prepetition Financing Documents.

(d)      The Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordination, or any other liabilities, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time through the Petition Date; <u>provided</u> that the Debtors do not waive any rights set forth in Paragraph 22.

16.      <u>Effect of Stipulations on Third Parties</u>.

(a)      <u>Generally</u>.      The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph 15 and Paragraph D above of this Final Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee (including any Chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee <u>unless</u>, and solely to the extent that, subject to Paragraph 32 below, a party-in-interest with standing and

AmericasActive:13725773.14

requisite authority:  (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 17 of the Interim Order and this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by September 11, 2019 (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Agent (with respect to the Prepetition Collateral) or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, or (z) with respect to the Committee, the Committee has filed the appropriate pleadings commencing a Challenge by the Challenge Deadline, as such applicable date may be extended in writing from time to time in the sole discretion of the Agent (with respect to the Prepetition Collateral) or by this Court for good cause shown pursuant to an application filed by the Committee prior to the expiration of the Challenge Deadline (the hearing on any such application shall be scheduled for the first available omnibus hearing scheduled in the Chapter 11 Cases following the filing of such application); and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided, however, if the Chapter 11 Cases convert to Chapter 7 prior to the Challenge Deadline, the Challenge Deadline shall be extended for the Chapter 7 trustee to 10 days after the appointment or election of such trustee,  For the avoidance of doubt, subject to the provisions hereof, the Committee is granted standing to commence a Challenge by the Challenge Deadline and any trustee appointed or elected in these Chapter 11 Cases shall,

27

until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this Paragraph (whether commenced by such trustee, the Committee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, and stipulations of the Debtors in the Interim Order and this Final Order.

(b)       Binding Effect.  To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Final Order become binding, conclusive, and final on any person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees,

28

incurred in defending themselves in any such proceeding, pursuant to the Prepetition Financing Documents.

17.    <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in the Interim Order or this Final Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with:  (a) objecting, contesting, or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Financing Documents or any security interests, liens, or claims granted under the Interim Order, this Final Order, the DIP Loan Documents, or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action against any of the DIP Lender, the Prepetition Secured Parties, or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; or (c) contesting the Prepetition Lien and Claim Matters; <u>provided</u> that no more than $50,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters (of which the Committee stipulates that $20,000 has been incurred as of August 2, 2019).

18.    <u>No Lien on Avoidance Actions or Their Proceeds</u>.  For the avoidance of doubt, the DIP Collateral, DIP Liens, DIP Superpriority Claims shall not include, nor extend to, any Avoidance Actions or to any and all products, rents, offspring, profits, and proceeds of any Avoidance Actions.  Furthermore, the Adequate Protection Liens and Section 507(b) Claims of GenNx360 and Hark in their capacities as Prepetition Lenders shall not include, nor extend to,

any Avoidance Actions or to any and all products, rents, offspring, profits, and proceeds of any Avoidance Actions.

19.    <u>Adequate Protection</u>.  The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Final Order (the "<u>Adequate Protection</u>"), including, without limitation, in this Paragraph, is reasonable and calculated to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek adequate protection or to seek modification of a grant of Adequate Protection provided in the Interim Order and this Final Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request.

(a)    <u>Adequate Protection Liens</u>.  As adequate protection, the Agent, in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, is hereby granted, for the benefit of the Prepetition Secured Parties, valid, binding, enforceable, and perfected junior security interests and replacement liens (the "<u>Adequate Protection Liens</u>") upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever located, in each case to secure the Prepetition Secured Obligations against, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by:  (i) the reduction in Prepetition Collateral available to satisfy Prepetition Secured Obligations as a consequence of the priming of the Prepetition Secured Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price, or otherwise of the Prepetition Collateral as a consequence of the use, sale, or lease of the Prepetition Collateral by the Debtors or as a result of the imposition of the automatic stay; and (iii) the sum of the

aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral that is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than Prepetition Secured Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii), and (iii) above, all to the extent authorized by the Bankruptcy Code.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims, and (C) the Permitted Prior Senior Liens.  The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Final Order and the DIP Loan Documents, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens, and DIP Superpriority Claims.

(b)    Section 507(b) Claims.  To the extent that the Agent shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Agent for the benefit of the Prepetition Secured Parties  is hereby each granted an administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "Section 507(b) Claim") with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, the Permitted Prior Senior Liens, DIP Obligations, DIP Liens, and DIP Superpriority Claims.

AmericasActive:13725773.14

20.     <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the milestones attached hereto as <u>Exhibit C</u> (as have been amended, supplemented or otherwise modified from time to time, the "<u>Milestones</u>").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under the DIP Facility, the Interim Order and this Final Order, (b) subject to the expiration of the Remedies Notice Period (defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under the Interim Order and this Final Order, and (c) permit the DIP Lender, subject to Paragraph 22, to exercise the rights and remedies provided for in this Final Order and the DIP Facility.

21.     <u>Indemnification</u>.  The Debtors shall indemnify the DIP Lender and its successors and assigns and each of their officers, directors, employees, agents, advisors, and controlling persons (each, an "<u>Indemnified Person</u>") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements, and other charges of counsel), and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility, the Interim Order or this Final Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith; provided that no Indemnified Person will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such Person's gross negligence, willful misconduct, fraud, or violations of this Order.  Other than with respect to the proviso at the end of the immediately preceding sentence, nothing herein is meant to limit the scope of any indemnity

AmericasActive:13725773.14

provided for the benefit of the DIP Lender in the DIP Loan Documents.  For the avoidance of doubt, to the extent there is any inconsistency between the indemnification provisions in the DIP Note and this Final Order, this Final Order shall govern.

22.    <u>Remedies</u>.    Upon the occurrence of an Event of Default under the DIP Loan Documents or upon the Maturity Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court (other than such notice required by this Paragraph), subject to the full funding of the Carve-Out, the DIP Lender is granted leave to cease making financial accommodations to the Debtors, accelerate any or all of the DIP Obligations, and declare such DIP Obligations to be immediately due and payable in full, in cash.  Upon the Maturity Date, and after providing five (5) Business Days' prior written notice to this Court (the "<u>Remedies Notice Period</u>"), the Agent, the U.S. Trustee, and counsel to the Committee, the DIP Lender shall be entitled to exercise all of its rights and remedies under this Final Order and the DIP Loan Documents, including, without limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims on any or all of the DIP Collateral and to exercise any other default-related remedies under the DIP Loan Documents, this Final Order or applicable law in seeking to recover payment of the DIP Obligations.  With respect to Permitted Prior Senior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law.  During the Remedies Notice Period, any party in interest may seek an order of the Court staying the DIP Lender's exercise of such remedies against the DIP Collateral and, if no such stay is obtained, then the DIP Lender may exercise any and all such rights and remedies and the Debtors' authority to use Cash Collateral under the Interim Order and this Final Order shall terminate, in each case, without further order of the Court or notice to any party.

23.     <u>Access to DIP Collateral</u>.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in the Interim Order, this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Maturity Date has occurred and is continuing under the DIP Loan Documents, the DIP Lender may, subject to the applicable notice provisions, if any, in the Interim Order, this Final Order and any separate agreement by and between such landlord and the DIP Lender, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder.  Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this Paragraph.

24.     <u>Insurance Policies</u>.  The Debtors consent to, and the DIP Lender and the Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Prepetition Collateral, as applicable.

25.     <u>Successors and Assigns</u>.  This Final Order, the DIP Note, and the other DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11 Cases and their successors and assigns, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative.

26.     <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order, and the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender and the Prepetition Secured Parties provided

AmericasActive:13725773.14

for in this Final Order, in any DIP Loan Document and any Prepetition Financing Document shall not be modified, altered, or impaired in any manner without their consent (which consent shall not be unreasonably withheld) by any order, including any order (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, each of the Debtors having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code), (ii) converting any of the Chapter 11 Cases to a Chapter 7 case, (iii) dismissing any of the Chapter 11 Cases, or (iv) any superseding cases under the Bankruptcy Code.  The terms and provisions of this Final Order as well as the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Loan Documents, and the Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims, and liens shall maintain their priority as provided by this Final Order and the DIP Loan Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

27.    Good Faith.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Final Order, the DIP Note, and the other DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and the Agent, and the extension of the financial accommodations to the Debtors by the DIP Lender and Prepetition Secured Parties pursuant to this Final Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The DIP Lender and the Prepetition Secured Parties are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

AmericasActive:13725773.14

28.    <u>Subsequent Reversal or Modification</u>.  Subject to Paragraphs 26 and 27, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Final Order and the DIP Loan Documents by the Debtors prior to the date of receipt of written notice to the DIP Lender and Agent of the effective date of such action or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Final Order and the DIP Loan Documents, including, without limitation, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Section 507(b) Claims.

29.    <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender and Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.   Any consent, modification, declaration of default, exercise of remedies, or non-exercise of remedies under or in connection with this Final Order or the DIP Loan Documents shall require the approval of the DIP Lender and shall not be deemed a waiver or relinquishment of any of the rights of the DIP Lender. Except as expressly set forth herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice, or modify any rights, claims, or defenses available in law or equity to the DIP Lender or the Prepetition Secured Parties, including, without limitation, the right (a) to request conversion of any of the Debtors' Chapter 11 Cases to Chapter 7, (b) to seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) to object to the fees and expenses of any Retained Professionals, and (d) to seek

AmericasActive:13725773.14

relief from the automatic stay.  All such rights, claims, and defenses, and the rights, objections, and defenses of all parties in connection therewith, are hereby reserved.

30.  <u>Additional Defaults</u>.  In addition, and without limitation of the Events of Default set forth in and defined in the DIP Loan Documents, the Interim Order, or this Final Order, it shall be a default hereunder (and constitute an "Event of Default" under the DIP Loan Documents) if an order is entered dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner or other estate representative with expanded powers.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Lender and the Prepetition Secured Parties under the Interim Order and this Final Order and shall preserve the Carve-Out.  It shall be an Event of Default for the sale of substantially all of the assets of the Debtors, unless, upon the closing of such transaction, all liens securing the DIP Obligations and the Prepetition Secured Obligations (in their respective priority) are transferred to the proceeds of such sale.  If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and the DIP Superpriority Claims granted to the DIP Lender hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in the Interim Order and this Final Order until all DIP Obligations and indebtedness owing to the DIP Lender under the DIP Loan Documents shall have been indefeasibly paid in full in cash and the DIP Lender's obligations and commitments under the DIP Loan Documents shall have been terminated, and this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection

AmericasActive:13725773.14

Liens, Section 507(b) Claims, and the Carve-Out.  It shall be an Event of Default if, without the consent of the DIP Lender, the Debtors' actual disbursements for the payment of the fees and expenses of Retained Professionals and reimbursement of Committee Expenses exceed, on a line item basis for each Retained Professional or group of Retained Professionals, as the case may be, the total amounts reflected in the "Non-Recurring Disbursements" section of the DIP Budget.

31.    <u>Order Governs</u>.  In the event of any conflict between or among, as applicable, the provisions of the Interim Order, this Final Order and the DIP Loan Documents, the Motion, or any supporting documents, the provisions of this Final Order shall control and govern to the extent of such conflicts.

32.    <u>Right to Credit Bid/Assume Debt</u>.  Notwithstanding anything herein to the contrary, including Paragraph 16 above, pursuant to, among other things, section 363(k) of the Bankruptcy Code, (i) the DIP Lender in its capacity as Stalking Horse Bidder (as defined on <u>Exhibit C</u>) shall have the exclusive right to use the DIP Obligations, DIP Liens, and DIP Superpriority Claim to credit bid at the Auction, (ii) the DIP Lender in its capacity as Stalking Horse Bidder shall have the right to include as part of its Stalking Horse Bid an assumption of the Obligations under Term Loan A in the amount not less than $5,347,722.47 plus any other accrued and accruing unpaid Obligations thereunder, including interest, fees and expenses (including legal fees and expenses), as part of its Stalking Horse Bid and (iii)  the DIP Lender in its capacity as Stalking Horse Bidder shall have the right to include as part of its Stalking Horse Bid the assumption of the Obligations under Term Loan B (subject to satisfaction of the Obligations under Term Loan A) at the Auction.  Notwithstanding anything herein to the contrary, including the foregoing and Paragraph 16 above, (i) to the extent that the DIP Lender in its capacity as Stalking Horse Bidder seeks to make subsequent overbids at the Auction (as

38

defined on Exhibit C) that include a crediting of its assumption of any portion of Term Loan B, in order for the crediting of such overbids to be considered higher and better for purposes of the Auction, the Stalking Horse Bidder shall be required to provide cash collateralization (which may be in the form of a letter of credit) of such overbid to the extent of the amount of the Term Loan B portion that it seeks to have credited for purposes of the overbid at the Auction and (ii) to the extent that the Stalking Horse Bidder is the successful purchaser of the Debtors' assets, the Committee and DNOW agree, that upon a successful Challenge, if any, to the nature, extent, validity or priority of the Term Loan A, Term Loan B, Term Loan C loans or the 2016 Amended and Restated Credit Agreement, they shall not seek to recover any portion of the Term Loan A Obligations from the DIP Lender, the Stalking Horse Bidder, GenNx360, Hark or the Agent. Nothing in this paragraph shall prejudice or otherwise impact any Challenge to the nature, extent, validity or priority of the rights, claims, causes of action, or other available relief arising out of, or otherwise relating to, the 2016 Amended and Restated Credit Agreement, the Term Loan A, Term Loan B or Term Loan C obligations.  Such amounts of cash collateralization may be increased each round by the minimum overbid amount.  If the DIP Lender in its capacity as Stalking Horse Bidder is the prevailing bidder, such collateralized amount shall be held in escrow subject to further determination by the Court.  Subject to the cash collateralization provisions of this paragraph, nothing herein shall preclude the DIP Lender in its capacity as Stalking Horse Bidder and GenNx 360 from asserting in connection with the Sale Hearing (as defined in Exhibit C) that the credit bid or assumption of any or all Term Loan B shall be valued in a different manner than as valued by the Debtors, in consultation with the Committee, at the Auction, and the rights of all parties , including the Debtors and Committee, to object thereto are reserved.

AmericasActive:13725773.14

33.     <u>No Marshaling</u>.  Except for the Prepetition Collateral of GenNx360 and Hark in their capacities as Prepetition Lenders, none of the DIP Collateral, or Prepetition Collateral  shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action; <u>provided</u>, that notwithstanding the foregoing and anything to the contrary in the DIP Note, the DIP Lender and the Prepetition Secured Parties shall first use all DIP Collateral or Prepetition Collateral (respectively) that is encumbered property of the Debtors as of the Petition Date prior to using any other DIP Collateral or Prepetition Collateral (respectively) to finally and indefeasibly repay the DIP Obligations or Prepetition Secured Obligations (respectively) in full in cash.   For the avoidance of doubt, there shall be no marshalling of the Prepetition Collateral securing the Term Loan C obligations.

34.     <u>Waiver of Requirement to File Proofs of Claim</u>.

(a)     The DIP Lender shall not be required to file proofs of claim in the Chapter 11 Cases or any successor Chapter 7 cases, in order to maintain its claims for payment of the DIP Obligations under the applicable DIP Loan Documents.  The statements of claim in respect of the DIP Obligations set forth in the Interim Order and this Final Order, together with the evidence accompanying the Motion and presented at the Interim Hearing and the Final Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)     The Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases or any successor Chapter 7 cases, in order to maintain their respective claims for payment of the Prepetition Secured Obligations under the applicable Prepetition Financing Documents or for performance of the Adequate Protection.  The

AmericasActive:13725773.14

statements of claim in respect of the Prepetition Secured Obligations and the Adequate Protection set forth in the Interim Order and this Final Order, together with the evidence accompanying the Motion and presented at the Interim Hearing and the Final Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(c)     Master Proof of Claim.  Notwithstanding any order to the contrary entered by this Court in relation to the establishment of a bar date in the Chapter 11 Cases or any successor Chapter 7 cases, the Agent on behalf of itself and the Prepetition Secured Parties shall be authorized (but not required) in its sole discretion to file a master proof of claim against the Debtors (each a "Master Proof of Claim") on account of their prepetition claims arising under the Prepetition Financing Documents, as applicable.  Upon the filing of a Master Proof of Claim against the Debtors, the applicable Prepetition Secured Party and each of its respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the Prepetition Financing Documents, and the claims of the Prepetition Secured Party (and its respective successors and assigns) named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Chapter 11 Case or any successor cases in the amount set forth opposite each name listed in the Master Proof of Claim.  The Agent shall further be authorized to amend its respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein, or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this Paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not

41

affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of each Prepetition Secured Party as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

35.    <u>Headings</u>.  The headings in this Final Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Final Order.

36.    <u>Immediate Effect of Order</u>.  This Final Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order.  All objections to the entry of this Final Order have been withdrawn or overruled and the Motion is approved on a final basis on the terms and conditions set forth herein.  The Debtors shall promptly mail copies of this Final Order to the Notice Parties and to counsel to the Committee

37.    <u>Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

**Dated: August 7th, 2019**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

42